UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DEBRA LYNN WEBSTER,

        Plaintiff,

-vs-

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

        Defendant.

**DECISION and ORDER
No. 1:15-cv-00981(MAT)**

---

## INTRODUCTION

Proceeding pro se, Debra Lynn Webster ("Plaintiff") brings this action pursuant to Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("Defendant" or "the Commissioner"), denying his application for Disability Insurance Benefits ("DIB").

## PROCEDURAL STATUS

Plaintiff filed for DIB on April 27, 2012, alleging disability beginning on April 1, 2007, due to depression, anxiety, high blood pressure, sleep problems, a degenerative knee condition, foot and ankle swelling, an umbilical hernia, panic attacks, and a thyroid condition. (T.109, 212).[1] After the claim was denied at the initial level (T.107-23), Plaintiff requested a hearing, which was held before administrative law judge William M. Manico ("the ALJ") on July 15, 2014. Plaintiff appeared with counsel and testified, as

---

[1] Citations in parentheses to "T." refer to pages from the certified transcript of the administrative record.

did an impartial vocational expert ("the VE"). (T.57-100). On August 4, 2014, the ALJ issued an unfavorable decision. (T.28-53). The Appeals Council denied Plaintiff's request for review on September 10, 2015 (T.1-7), making the ALJ's decision the final decision of the Commissioner. Plaintiff, acting pro se, timely commenced this action.

The Commissioner has moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure ("Rule 12(c)"). Plaintiff did not file a cross-motion; nor did Plaintiff file any opposition papers to the Commissioner's motion. For the reasons discussed below, the Commissioner's decision is affirmed.

## THE ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process, see 20 C.F.R. 404.1520(a), in adjudicating Plaintiff's DIB claim.

At step one, the ALJ found that Plaintiff last met the insured status requirements of the Act on December 31, 2012 (date last insured), and did not engage in substantial gainful activity between the alleged onset date (April 1, 2007) and the date last insured.

At step two, the ALJ determined that Plaintiff had the following "severe" impairments: obesity, degenerative joint disease of the knees, depression, anxiety, and borderline personality disorder. (T.33). The ALJ found that "claimant's post-traumatic stress disorder ("PTSD") was not medically determinable [and thus not "severe"] because, "[a]lthough diagnosed by both consultative

examiners, treatment notes offering a more significant longitudinal history of several years, from Dr. [Tulio] Ortega, her treating psychiatrist, and Paula Callahan, her counsel [sic], do not reflect such diagnosis." (T.34). The ALJ "assign[ed] greater weight to Dr. Ortega and Mrs. [sic] Callahan and finds that claimant does not experience [PTSD]. Although questioned at great length about her conditions, claimant made no mention of [PTSD] or [PTSD] related symptoms." (Id.). The ALJ found that Plaintiff's hypertension, hyperlipidimia, hypothyroidism, and diabetes were not "severe" because the "evidence does not reflect any vocational limitations arising from [these] conditions[,]" her hypertension and hyperlipidimia were well controlled with medication, she was not prescribed or taking any medication for hypothyroidism, and there was only one diagnosis of diabetes in the record and no treatment for that condition. (T.34). The ALJ also found that Plaintiff's umbilical hernia was not severe since the treatment notes reflect no discomfort caused by the condition. (Id.).

At step three, the ALJ found that through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526) (T.35). The ALJ gave particular consideration to Listings 1.02 (Major dysfunction of a joint(s) (due to any cause)); 12.04 (Affective disorders); 12.06 (Anxiety related disorders); and 12.08 (Personality disorders) and found that Plaintiff did not fulfill the criteria

for these listings. The ALJ further noted that although "obesity" has been deleted from the Listing of Impairments, when obesity is found to be a medically determinable impairment, such as in Plaintiff's case, it must considered in fashioning an RFC. The ALJ stated that he considered the effects of Plaintiff's obesity in reducing her residual functional capacity ("RFC") pursuant to Social Security Ruling ("SSR") 02-01p. (T.35).

Before proceeding to step four, the ALJ determined that Plaintiff has the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with the following exceptions: she "may only walk continuously for approximately 5 minutes"; she "may occasionally climb ramps and stairs, balance, or stoop"; she "needs to have a hand rail when climbing ramps or stairs"; she is limited to stooping to approximately 90 degrees; she should avoid jobs that involve repetitive stooping; she "should be allowed to alternate sitting and standing consistently with the standing, walking, and sitting limitations of sedentary work"; she "may never kneel, crouch or crawl and should never climb ladders, ropes, or scaffolds"; she "retains the mental [RFC] to perform unskilled work with simple instructions where interactions with others are routine, superficial, and related to the work performed"; her "[i]nteractions with others are limited to approximately one third of the work day"; and she "needs a regular work break approximately every 2 hours and should not do fast paced assembly work." (T.37 (footnotes and citations to record omitted); see also T.40-47).

At step four, the ALJ found that Plaintiff had past relevant work as an accounts payable clerk and senior bookkeeper, but that she is unable to return to that work because these are skilled occupations, and her RFC limits her to unskilled work. (T.47). The ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. Specifically, the ALJ relied on the VE's testimony that a person with Plaintiff's RFC and vocational profile could perform the requirements of representative occupations such as surveillance system monitor (Dictionary of Occupational Titles ("DOT") 379.367-010) and assembler (representative job: lens inserter, DOT 713.287-026), which exist in significant numbers nationally and statewide. (T.48).[2] Accordingly, the ALJ entered a finding of "not disabled." (T.48).

## STANDARDS OF REVIEW

**I. Judgment On the Pleadings**

A Rule 12(c) motion for judgment on the pleadings is evaluated under the same standard as a Rule 12(b)(6) motion to dismiss. Bank

---

[2] However, the VE did not actually testify that assembler (lens inserter) was a job that a hypothetical person with Plaintiff's RFC and vocational profile could perform. Instead, the VE testified that if the hypothetical individual could not perform fast-paced assembly work, "[t]he only jobs that [she] can come up with would the job of surveillance system monitor. That's basically we lose the, the elemental manual work because of the issue with fast-paced assembly, and we lose (INAUDIBLE) because of contact rarely solely day to day. It, it really just, realistically, this gives us the surveillance system monitor." (T.96). This error does not affect the ultimate finding of "not disabled." Bavaro v. Astrue, 413 F. App'x 382, 384 (2d Cir. 2011) (unpublished opn.) ("The Commissioner need show only one job existing in the national economy that [a claimant] can perform.") (citing 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1566(b) ("Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications.").

of N.Y. v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010). Thus, "[t]o survive a Rule 12(c) motion [for judgment on the pleadings], the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (internal quotation marks and citation omitted). A pro se litigant's submissions must be construed liberally "to raise the strongest arguments that they suggest." Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006). In the context of an appeal of a denial of Social Security benefits, the Court may not grant an unopposed Rule 12© motion based merely upon the party's failure to respond; rather, the Court "must review the record and determine whether the moving party has established that the undisputed facts entitle it to judgment as a matter of law." Martell v. Astrue, No. 09 Civ. 1701, 2010 WL 4159383, at *2 n.4 (S.D.N.Y. Oct. 20, 2010) ("[I]n light of the similarity between a motion for summary judgment and a motion on the pleadings in the present context, where there is a fulsome record of the underlying administrative decision, we look to the summary judgment context for guidance."); accord, e.g., Petrovic v. Comm'r of Soc. Sec., No. 15CIV2194KMKPED, 2016 WL 6084069, at *8 (S.D.N.Y. Aug. 25, 2016), rep. and rec. adopted, No. 15CV2194KMKPED, 2016 WL 6082038 (S.D.N.Y. Oct. 14, 2016) (citations omitted).

**II.  Review of the ALJ's Decision**

A decision that a claimant is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. 42 U.S.C. § 405(g). "Where the

Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the district court] will not substitute [its] judgment for that of the Commissioner." Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002). This deferential standard is not applied to the Commissioner's application of the law, and the district court must independently determine whether the Commissioner's decision applied the correct legal standards in determining that the claimant was not disabled. Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984). Failure to apply the correct legal standards is grounds for reversal. Id. Therefore, this Court first reviews whether the applicable legal standards were correctly applied, and, if so, then considers the substantiality of the evidence. Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987). The Commissioner's determination will not be upheld if it is based on an erroneous view of the law that fails to consider highly probative evidence. Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999). In such cases, the reviewing court has the authority to reverse with or without remand. See 42 U.S.C. § 405(g).

## DISCUSSION

### I. Further Consideration of Listing 1.02 Is Required

Section 1.02 outlines the conditions required to establish disorders of the joint. See 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.02. To qualify as a "[m]ajor dysfunction of a joint(s)" for purposes of Listing 1.02, Plaintiff's bilateral knee pain must be characterized by:

> gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
>> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00132b.
>
> . . . .

20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.02. Section 1.00(13)(2)(b)(1) defines "[i]nability [t]o ambulate effectively" as

> an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.00(13)(2)(b)(1).

From the beginning of time-period covered by the administrative transcript, Plaintiff repeatedly sought treatment from her medical providers for pain, swelling, and limited range of motion in both knees. In addition, diagnostic imaging studies, over time, indicate a worsening of Plaintiff's osteoarthritis in both knees. On May 5, 2008, Plaintiff saw her primary care physician Pankaj Garg, M.D. who observed decreased range of motion in left knee with tenderness and crepitus. (T.319). Left knee x-rays on July 22, 2008, showed marked osteoarthritis, small joint effusion and moderate patellofemoral arthritis. (T.240). On August 15, 2008,

Plaintiff underwent radiological studies of her knees due to right knee pain and pressure, primarily in the posterior region. The exam findings were "moderate osteoarthritis involving all three joint space compartments. No joint effusion is seen. No fractures are noted." The diagnostic impression was "moderate to severe osteoarthritis." (T.243). On October 14, 2008, Plaintiff underwent further radiological studies of her knees. The findings from this exam were "[s]evere medial compartment degenerative change is seen bilaterally with mild genu varus deformity bilaterally." The diagnostic impression was "severe degenerative change [in] both medial compartments" of the knees. (T.246). Orthopedic surgeon Dr. Alan Larimer reviewed Plaintiff's recent bilateral standing x-rays which demonstrated a dramatic varus alignment of both knees with no medial joint space, signifying complete destruction of the articular cartilage. (T.246, 296-97). However, there does not appear to be gross anatomical deformity, as Dr. Larimer noted on October 14, 2008, that Plaintiff "stands erect without pronounced varus or valgus alignment of either knee joint." (T.296). Neither of the consultative physicians found gross deformities during their examinations of Plaintiff.

The ALJ determined that Listing 1.02 was not met because the medical evidence did "not show gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s) with

either: A) involvement of one major peripheral weight-bearing joint, resulting in inability to ambulate effectively, as defined in 1.00B(2)(b)[.]" The ALJ relied on report of Dr. Toor, the consultative examiner, who found that Plaintiff's bilateral knee flexion and extension was reduced by only 5 degrees (145 degrees out of 150). The ALJ also stated that "[t]hough the [consultative] examiner noted swelling in the knees and ankles, there was no cyanosis, clubbing, or edema." (T.35) (citing T.537 (Tenderness, slight swelling in the knees. . . . No evident subluxations, contractures, ankylosis, or thickening."); T.538 ("swelling in the knees and ankles bilaterally. No cyanosis, clubbing, or edema.")). The ALJ also relied on Dr. Toor's comment that Plaintiff does not need an assistive device to ambulate. (Id.) (citing T.536 ("She does not use [an] assistive device.")). While the ALJ's discussion of the medical evidence could have been more complete, the Court finds that substantial evidence supports the decision that Plaintiff does not meet Listing 1.02, inasmuch as her reported physical activities, and failure to use an assistive device, are inconsistent with the definition of "inability to ambulate effectively." In addition, although there is a varus deformity in Plaintiff's knees noticeable on x-rays, the record does not reflect findings by any physicians that Plaintiff has gross anatomical deformities in her knees.

**II. The Physical RFC is Supported by Substantial Evidence**

As noted above, the ALJ determined that Plaintiff has the physical RFC to perform sedentary work as defined in 20 C.F.R.

404.1567(a). The regulations define sedentary work as work that "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools," and requires "walking and standing" only "occasionally." 20 C.F.R. § 416.967(a). The ALJ also assigned several additional limitations, specifically, that Plaintiff "may only walk continuously for approximately 5 minutes"; and she "should be allowed to alternate sitting and standing consistently with the standing, walking, and sitting limitations of sedentary work"; and she "may never kneel, crouch or crawl and should never climb ladders, ropes, or scaffolds."

In support of his determination that Plaintiff can perform sedentary work, the ALJ cited to the June 23, 2009, and 2012 reports prepared by consultative physicians Dr. George A. Sirotenko and Dr. Harbinder Toor, respectively. The ALJ also relied on Plaintiff's hearing testimony regarding her physical capabilities. (See T.37 (citing Ex. 6F (Dr. Sirotenko's report); Ex. 16F (Dr. Toor's report); "claimant's hearing testimony").

For his medical source statement, Dr. Sirotenko diagnosed Plaintiff with end stage degenerative joint disease of both knees, and opined that she has "[m]oderate limitations regarding prolonged standing, walking, stairs, inclines or ladders. She should avoid repetitive kneeling, squatting or bending. She would benefit from activities of a sedentary nature only with the opportunity to alternate between sitting, standing or walking throughout an eight hour day." (T.334).

-11-

Three years later, on October 1, 2012, Dr. Toor issued a consultative report assigning more restrictive limitations. Dr. Toor stated that she has "moderate to severe limitation[s] standing, walking, squatting, and lifting. Pain and obesity interfere with her physical routine and sometimes with the [sic] balance. She has moderate limitation sitting a long time."

At the hearing, the ALJ asked Plaintiff if she could do a job where she is on her feet most of the day. Plaintiff replied, no, due to pain in the legs and knees. She estimated she can walk continuously for about 5 minutes at a time. The ALJ asked Plaintiff if she could you do a job where she is sitting for most of the day. Again, Plaintiff replied no, because her legs would get stiff, and her back would not "hold out" unless she could get up and move around. The Court notes that Plaintiff did not attribute her inability to do a sedentary job due to her knee problems. In addition, back problems were not included as a severe impairment at step two, which is not inconsistent with the radiological studies of Plaintiff's lumbar spine on September 26, 2008, which showed a degenerative disc disease at L5-S1, and degenerative facet arthropathy from L4 through S1, but no acute abnormality. (T.305). The ALJ's restriction of Plaintiff to only walking continuously for about 5 minutes, with the option to alternate between sitting and standing "may only walk continuously for approximately 5 minutes" adequately accounted for Plaintiff's self-stated limitations, and Drs. Toor's and Sirotenko's opinions.

**III. The Mental RFC is Supported by Substantial Evidence**

As noted above, based on Plaintiff's mental impairments and the limitations that flowed from them, the ALJ limited Plaintiff to unskilled, simple work, that did not involve fast-paced assembly tasks, that allowed for regular breaks about every two hours, and which only required interactions with others that were routine, superficial, related to the work performed and limited to approximately one-third of the work day. (T.37). The reports the consultative psychologists, Dr. Maureen McAndrews and Dr. Christine Ransom, are not inconsistent with the mental RFC assessment. When she examined Plaintiff on June 23, 2009, Dr. McAndrews opined that "[v]ocationally, the claimant would be able to follow and understand simple directions and perform simple tasks, provided these tasks fall within the limits of her physical capabilities. She can maintain attention and concentration. . . . She can learn new tasks and perform complex tasks, provided these tasks fall within the limits of her physical capabilities. She can make appropriate decisions, relate adequately with others, and deal appropriately with stress." (T.328). On October 1, 2012, Dr. Ransom conducted a psychological evaluation and opined that Plaintiff could follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration for simple tasks, maintain a simple regular schedule, and learn simple new tasks, although she has moderate difficulty performing complex tasks, relating adequately with others and appropriately dealing with stress.

Thus, Dr. McAndrews and Dr. Ransom provided similar medical source statements regarding the limitations caused by Plaintiff's mental impairments. The main point of disparity between Dr. McAndrews and Dr. Ransom is that Dr. McAndrews opined that Plaintiff cannot currently maintain a regular schedule, given that she has a sleep disorder with inverted sleep cycle. (T.328). Dr. McAndrews noted that Plaintiff's asserted reason that she "cannot work" is that she "cannot sleep, but then [Plaintiff] acknowledges she does not take the medications prescribed for sleep because they would make her too sleepy . . . ." (T.324). The treatment notes in the record indicate that it was one prescription (Seroquel) that caused a problem with Plaintiff oversleeping. Subsequently to Dr. McAndrews' consultation, Plaintiff agreed to try an alternative sleep aid, Trazodone, which was prescribed by her psychiatrist, Dr. Tullio Ortega. (See, e.g., T.479) (note dated March 17, 2010; Dr. Ortega noted, "She continues to have Trazodone which she can take for sleeping which she needed even though she doesn't take this medication quite often. She came today a little late for her appointment but does appear to be brighter and definitely 100% improved from the way she was a couple years ago when I met her."). In Dr. Ransom's report, she notes that Plaintiff indicates she he is having difficulty falling asleep and staying asleep, but there is no mention of an inverted sleep cycle.

The Court notes that Plaintiff's attorney submitted a disability questionnaire (Ex. 23F) to Plaintiff's social worker, Paula Callahan ("SW Callahan"), who had been counseling Plaintiff

since 2010 at Dr. Ortega's office. SW Callahan did not answer any of the questions or provide any specifics regarding Plaintiff's limitations, but instead referred to the enclosed progress notes. In February 2009, Dr. Ortega and SW Callahan completed a Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination (T.621-24), and opined that there was no evidence of Plaintiff having mental functional limitations[3] as a result of Plaintiff's major depression. Subsequent such reports, although some of them reflect no greater than "moderate[ ]" limitations in certain areas of mental functioning. Dr. Ortega's later treatment notes reflect that while Plaintiff continued to have psychological stressors in her life, she experienced a significant improvement over time with medication and therapy (T.424, 478-79, 526, 658). On November 2, 2011, and August 1, 2012, Plaintiff denied any problems with depression, anxiety, and worries or panic attacks. (T.526, 658). On December 4, 2013, Dr. Ortega noted Plaintiff had experienced "good results" from Pristiq and Remeron over the years, "though she has not been completely symptom free." (T.667). Dr. Ortega wrote that Plaintiff seemed to be at her baseline; she was logical and engaged well one-to-one. (Id.). The treatment notes and assessments from Plaintiff's mental health treatment providers thus are congruent with the mental RFC assessment formulated by the ALJ.

---

[3] In the part of the form assessment labeled, Functional Limitations, Dr. Ortega/SW Callahan checked the box "No Evidence of Limitations" with regard to all areas of Mental Functioning listed on the form. (T.621).

-15-

**CONCLUSION**

For the reasons discussed above, the Court finds that the decision denying benefits was not the product of legal error and is supported by substantial evidence in the record. Accordingly, the decision is affirmed. The Commissioner's motion for judgment on the pleadings is granted, and the Complaint is dismissed. The Clerk of Court is directed to close this case.

**SO ORDERED.**

**S/Michael A. Telesca**

HON. MICHAEL A. TELESCA
United States District Judge

Dated:   February 22, 2017
         Rochester, New York.